IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SportsK.com Inc. d/b/a JerseyWorld<br><br>Plaintiff,<br><br>**-against-**<br><br>NFLPA;<br>Dallas Cowboys Merchandising;<br><br>Defendants. | **Complaint for a Civil Case**<br><br>Case No. 19-cv-11734<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff SportsK.com Inc. (hereinafter, *"Plaintiff"*), by and through its attorneys, Rosenbaum Famularo, P.C. for its Complaint against Defendants NFLPA and Dallas Cowboys (hereinafter *"Defendants"*), alleges and shows this Honorable Court as follows:

### I. INTRODUCTION

This lawsuit centers around the Defendant's unsupported and untrue allegations to the online marketplace, Amazon.com, that Plaintiff was engaged in sales of counterfeit products and that Plaintiff had infringed the intellectual property rights owned by the NFLPA. Plaintiff incurred damages as a result of the suspension of Plaintiff's seller account from the Amazon platform. The Amazon report infringement page lacks significant verification and often leads to termination or suspension of selling accounts. Plaintiff's suspension was directly caused by Defendant's false counterfeit complaints to Amazon regarding products bought directly from Defendant, Dallas Cowboys Merchandising as well as Outerstuff, the authorized distributor of NFLPA products, and resold by Plaintiff on Amazon. Defendants claim it violated their online distribution policies which restricts reselling on Amazon. While Plaintiff does have a buyer

1

account with Dallas Cowboys Merchandising, Plaintiff is not signatory to any agreement with Defendants. The Plaintiff ordered and received these items after making Defendant expressly aware of its intention to sell Defendant's products on Amazon. More importantly, Plaintiff never sold counterfeit goods. Defendants intended to destroy Plaintiff's business reputation and relationship with Amazon by submitting baseless infringement accusations to the Amazon platform.

## II. THE PARTIES

1. Plaintiff is a domestic corporation organized and existing under the laws of Michigan with its principal place of business at 19051 Ecorse Rd, Allen Park, MI 48101.

2. Howard Faber, a resident in the State of Michigan, is the owner and operator of "SportsK.com Inc."

3. Plaintiff purchases goods from Outerstuff, the licensed distributor for NFLPA products, and Dallas Cowboys Merchandising directly.

4. Upon information and belief, Defendant NFLPA is a corporation with its principal headquarters located at 1133 20th St. NW, Washington, DC 20036.

5. Upon information and belief, Defendant Dallas Cowboys is a corporation with its principal headquarters located at 1 Cowboys Way, Frisco, TX 75034.

## III. JURISDICTION AND VENUE

6. This Court has Jurisdiction pursuant to 28 U.S.C §1332 because there is complete diversity between all parties and the amount in controversy, as further detailed herein, exceeds $75,000.00, exclusive of interest and costs.

7. This court also has Jurisdiction of this matter under 28 U.S.C. 1338, as the substantive issues relate directly to intellectual property rights, such as trademark and copyright. As

discussed further herein, to properly decide the declaratory judgment count, and the other counts contained herein, this Court must apply federal intellectual property law.

8.  This court also has supplemental Jurisdiction of claims relating to estoppel injuries under 28 U.S.C. 1367, as such estoppel claims are so related to the claims within this complaint such that they arise from the same central controversy.

9.  This Court has Jurisdiction over Defendant NFLPA because NFLPA conducts substantial business in the Southern District of New York where, among other things, maintains interactive websites, and otherwise avails itself of the privilege of doing business in the Southern District of New York.

10.  This Court has Jurisdiction over Defendant Dallas Cowboys Merchandise because Defendants conduct substantial business in the Southern District of New York where, among other things, it maintains interactive websites, and otherwise avails itself of the privilege of doing business in the Southern District of New York.

**BACKGROUND FACTS**

11.  Plaintiff does business as "JerseyWorld", an Amazon seller storefront. (Seller ID: A1GEQQMP53NTEG).

https://www.amazon.com/s?me=A1GEQQMPS3NTEG&marketplaceID=ATVPDKIKX0DER

12.  Amazon.com Inc. is the world's largest online retailer. The Amazon.com platform offers products worldwide. Amazon is available solely online at https://www.amazon.com/ (last visited January 22, 2019).

13.  *"Amazon provides a platform for third-party sellers (*"Sellers"*) and buyers (*"Buyers"*) to negotiate and complete transactions. Amazon is not involved in the actual transaction between Sellers and Buyers . . . ."*

3

https://www.amazon.com/gp/help/customer/display.html?nodeId=1161302 (last visited January 22, 2019).

14. Sellers fulfill the goods directly to Amazon's customers or ship the goods to various Amazon warehouses across the United States. At those warehouses, Amazon stores a seller's inventory and ships goods out of those warehouses.

15. Typically, to make a purchase on Amazon a Buyer searches for a particular item on Amazon.com or via its mobile application and submits an order.

16. The seller will then fulfill the order directly to the Amazon customer.

17. If the seller uses the Amazon warehouse, then upon the order, Amazon identifies that particular item at one of its many warehouses and fulfills that order by mailing the items to the Buyer.

18. Amazon.com Inc. allows Sellers to offer for sale and sell products on the Amazon.com platform. Amazon.com, Inc. requires that Sellers enter into agreements with it concerning the relationship between it and Sellers, duties and responsibilities of the Sellers, and other policies. *See, e.g.,* Amazon.com's Participation Agreement *available at* https://www.amazon.com/gp/help/ customer/display.html?ie=UTF8&nodeId=1161302 (last visited January 22, 2019).

19. JerseyWorld is an Amazon storefront primarily dealing in the sale of licensed sports apparel including authentic NFL, MLB, NHL and NBA Jerseys. Plaintiff has been sourcing its goods for the last 15 years by purchasing from Outerstuff and the Dallas Cowboys Merchandising directly, among other reputable brands and distributors.

20. Outerstuff designs and produces children's jerseys, t-shirts, and other clothing items for the leading brands in American sports, including the NFL, MLB, NBA, NHL, MLS, US Olympic

Committee, and more than 200 leading colleges and universities.

21.  At all times Plaintiff has lawfully acquired all products he sells on Amazon directly from the Defendants.

22.  Plaintiff does not repackage, modify or otherwise change the products purchased from the Defendants. Plaintiff resells the same products in the same packaging as received from the Defendants.

23.  Upon information and belief, Defendants NFLPA and Dallas Cowboys Merchandising do not dispute that the products sold to Plaintiff are in the exact same condition as received from the NFLPA and Dallas Cowboys.

24.  Upon information and belief, Defendant NFLPA was fully aware that Plaintiff sourced their goods from their distributor Outerstuff and that Plaintiff sold the goods purchased from their distributor on the Amazon platform. (Letters from Outerstuff, dated September 16, 2016 and August 10, 2018, confirming relationship with Plaintiff attached as **Exhibit A.**).

25.  Upon information and belief, between August 22, 2018 and August 23, 2018 Plaintiff spoke with and corresponded with a representative of Outerstuff named Laurence Raff who informed the Plaintiff that the NFLPA had a restriction regarding sales made on the Amazon platform.  Specifically, that they updated their policies and are now enforcing the NFLPA's online distribution policy. (Communications attached as **Exhibit B.).**

26.  Plaintiff informed Outerstuff and Defendants that he had the full intent to continue selling these products on the Amazon platform under the First Sale Doctrine, was not bound by any contract, and would not cease his sales as it was his right to resell under the First Sale Doctrine. Plaintiff requested an exemption based upon his long-term relationship with Defendants and advised they terminate his account and cease selling him products if this was impermissible.

27. Following, on August 22, 2018, Lawrence Raff, of Outerstuff, closed out Plaintiff's NFL, NHL, MLB and NBA Outerstuff accounts.

28. OuterStuff then terminated Plaintiff's account but continued to sell approximately $24,000 worth of jerseys to Plaintiff between August 27, 2018 and Sept 13, 2018 thus waiving any restriction they had on Amazon sales.  (Communications attached as **Exhibit C**).

29. Without justification, on August 9, 2018 Defendant NFLPA directed a brand enforcement company, Pointer-BP, to file intellectual property complaints, under email takedown_nflpa@pointerbp.nl, on the Amazon platform against Plaintiff alleging the Jerseys he was selling were unlicensed, counterfeit, infringing its trademark and a violation of the player's personality rights with full knowledge the Jerseys were purchased directly from their authorized distributor, Outerstuff. (Communications attached as **Exhibit D.**).

30. Upon information and belief, Pointer-Bp knew Plaintiff sourced directly from Defendants and refused to discuss the matter let alone retract their Amazon complaints. Pointer-Bp claimed they had the full authority to act on behalf of the NFLPA and merely stated the basis was the unauthorized use of the group players names and personality rights, however the right to control or license player names and personality rights ends at the first sale of these products. (Communications attached as **Exhibit E.).**

31. The Plaintiff provided the NFLPA's brand enforcement team Pointer-BP with evidence showing all products were sourced from their authorized distributor and manufacturer, Outerstuff.

32. Following, defendant NFLPA, through Pointer-BP, continued to file counterfeit and trademark intellectual property complaints against Plaintiff with full knowledge the products were authentic.

33. Plaintiff has also been purchasing products directly from the Dallas Cowboys Merchandising, PO BOX 841598, Dallas, TX 75284, credit@dallascowboys.net, since 2005.

34. Plaintiff received a message from the Dallas Cowboys Merchandising (licensing@dallascowboys.net) claiming the First Sale Doctrine did not apply to the sales made on the Amazon platform Amazon.

35. Upon information and belief Amon Simmons a representative of the Dallas Cowboys was aware Plaintiff was selling on Amazon on Oct. 16, 2017.

36. Without justification, on or around November 13, 2017, Defendant Dallas Cowboys Merchandising filed intellectual property complaints, under the emails dallascowboys@counterfind.com, cowboys@infringementreports.com and brandprotection@mm-nfl.com, on the Amazon platform against Plaintiff alleging the Jerseys he was selling were counterfeit with full knowledge the Jerseys were purchased directly from them. (Communications attached as **Exhibit F.**).

37. Upon information and belief, on August 22, 2018 Plaintiff Spoke with a representative of the Dallas Cowboys Merchandising named Amon Simmons who informed the Plaintiff that they would close the account and their basis for the complaint was the enforcement of the Dallas Cowboys online policy.

38. On or about September 7th, 2018 and September 21st, 2018, without being signatory to any agreement with Defendant Dallas Cowboys Merchandise fulfilled approximately $30,000 worth of inventory to Plaintiff after Plaintiff again informed Defendant Dallas Cowboys Merchandising that the products would be sold on the Amazon platform.

39. After the Defendant Dallas Cowboys Merchandising fulfilled these products to Plaintiff, they proceeded to file complaints on Amazon from September 25, 2018 through October 4, 2018

alleging the products sold to be counterfeit. (Communications attached as **Exhibit G.**).

40. In effort to defend these false complaints, plaintiff responded to Amazon's policy warnings explaining the source of the products while providing copies of invoices received from the complainants.

41. While some appeals were approved by Amazon, many were denied and there are currently 26 intellectual property complaints still present on the account health of JerseyWorld, Plaintiff's Amazon storefront.

42. Plaintiff has made numerous efforts to resolve these intellectual property complaints with the Defendants directly. To date, no retractions have been sent to Amazon.

43. Upon information and belief, all 26 products that received intellectual property complaints were sourced directly from the defendant Dallas Cowboys Merchandising and Outerstuff, the authorized distributor for Defendant NFLPA.

44. Plaintiff informed Defendants that a retraction of the erroneous complaint filed would prevent any unnecessary harm to their company.

45. Defendants refused to retract without an admission of guilt and waiver of all claims by Plaintiff.

46. As a result of Defendants failure to retract the counterfeit complaints filed, Plaintiff's Amazon storefront was suspended.

### *HARM TO JERSEYWORLD*

47. The Amazon storefront JerseyWorld was wrongfully suspended for selling counterfeit products due to false complaints filed by Defendants NFLPA and The Dallas Cowboys Merchandising.

48. This suspension lasted approximately from October 19, 2018 until November 14, 2018

and has resulted in lost profits and damages to plaintiff's Amazon business exceeding $80,000 dollars.

49. Upon information and belief, despite having confirmed the authenticity of the disputed goods, and with full knowledge Plaintiff's products were authentic, Defendants NFLPA and The Dallas Cowboys Merchandising continued to file false intellectual property claims alleging counterfeit sales against the Amazon storefront JerseyWorld in an attempt to restrict or curtail lawful sales of Defendants' genuine products and enforce the NFLPA's online distribution policy and the Dallas Cowboys Merchandising's online distribution policy, to which plaintiff was not a signatory.

50. The products sold by JerseyWorld were at all times authentic NFLPA and Dallas Cowboys products which were sold lawfully.

51. Upon information and belief, Defendants are aware that complaints on Amazon result in suspensions, and, upon information and belief, knew Plaintiff was selling their products before filing the complaints.

52. At that time, the Amazon terms and conditions as they relate to intellectual property complaints recommends that a complainant make a test buy of the product in question for the complaint to determine authenticity and confirm counterfeit allegations.

53. Here, Defendants knowingly filed false intellectual property complaints against Plaintiff alleging both counterfeit sales and unlicensed products.

54. Upon information and belief, the true purpose of Defendants' intellectual property complaints was to ensure the suspension of all Amazon sellers that were not signatories to the NFLPA online distribution policy or the Dallas Cowboys Merchandising online distribution policy. Upon information and belief, the new NFLPA distribution contract wants Fanatics Inc. to

be the sole and exclusive ecommerce seller of NFLPA and Dallas Cowboys licensed merchandise, as Defendants NFLPA have equity investments in Fanatics Inc.

## IV. INJURIES

### TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR BUISNESS RELATIONSHIP

55. Plaintiff realleges and incorporates all previous paragraphs.

56. Plaintiff has an advantageous business relationship with Amazon, which allows him to sell on Amazon's website as a third-party seller.

57. Plaintiff is also in a contractual relationship with Amazon.

58. Upon information and belief, Defendants are fully aware of Plaintiff's contractual relationship with Amazon, because, among other reasons, Defendants work intimately with certain distributors who sell Defendants' products on Amazon.

59. Defendants intentionally and/or improperly interfered with Plaintiff's advantageous relationship with Amazon by complaining in writing to Amazon that Plaintiff was infringing on the NFLPA's and Dallas Cowboys Merchandising's intellectual property rights. Specifically, filed false infringement complaints to remove unauthorized Amazon sellers.

60. Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship and contract with Amazon.

61. Upon information and belief, Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff from selling products on their platform, as these defendants file complaints on Amazon on a regular basis.

WHEREFORE, for the reasons stated, this court should find that Defendants NFLPA and the Dallas Cowboys are liable for tortious interference with a business relationship and/or contract. This court should enter a judgment ordering Defendants to pay damages, costs, and fees

allowable by law.

## DEFAMATION

62. Plaintiff realleges and incorporates all previous paragraphs.

63. Defendants issued false statements to Amazon alleging Plaintiff sold counterfeit products.

64. Plaintiff did not sell counterfeit or unlicensed products or otherwise sell products that infringed on any intellectual property rights of the NFLPA or the Dallas Cowboys Merchandising.

65. Plaintiff is legally permitted to resell Defendant's products under the First Sale Doctrine.

66. Defendant's right to restrict ends at first sale.

67. Defendants false statements were injurious to Plaintiff's business as the resulting 26 intellectual property complaints caused Amazon to suspend their selling privileges.

68. These 26 intellectual property complaints presently remain on Plaintiff's Amazon seller account.

69. Defendant's false statements were published without privilege or authorization to Amazon.

70. Defendants were, at minimum, negligent in making the false statements to Amazon because, among other things, Defendants knew Plaintiff legally sourced their products directly through their authorized distributors.

71. Defendants acted with actual malice or with reckless disregard for the truth of the matter asserted in their statements to Amazon.

72. Defendant's goals were to remove all Amazon sellers to enforce the NFLPA's and Dallas Cowboys Merchandising's policy appointing Fanatics Inc. as the premier ecommerce seller of

their products.

73. Defendants committed defamation per se.

74. Defendants are not entitled to qualified privileges because Defendants did not act in good faith.

75. Plaintiff incurred special harm, including but not limited to its suspension from Amazon.

76. At the time Plaintiff was suspended, Plaintiff was generating average daily revenue of approximately $9,000.00.

77. Plaintiff is entitled to damages, costs, and fees allowed by law.

78. In addition to fees allowed by law, Plaintiff is also entitled to attorneys fees under the bad faith exception to the American Rule, as Defendants acted in tremendous bad faith.

WHEREFORE, for the reasons stated, this court should find that Defendants are liable for business defamation. This court should enter a judgment ordering Defendant to pay damages, costs, and fees allowable by law.

## SUPPLEMENTAL CLAIMS

### ESTOPPEL

79. Plaintiff realleges and incorporates all previous paragraphs.

80. Plaintiff ordered Jerseys from Outerstuff and The Dallas Cowboys Merchandising after making his intention of reselling these Jerseys on Amazon clear.

81. Upon information and belief, The Dallas Cowboys Merchandising and Outerstuff, as a certified distributor for Defendant NFLPA's products, sold Jerseys to Plaintiff with the knowledge that he would be reselling them on Amazon.

82. Defendant NFLPA is assumed to be aware of Outerstuff's practices, and has enough control over their distribution methods to require that they prohibit all individuals they sell from

reselling Jerseys on Amazon.

83. Regardless of prohibitions on reselling on Amazon, The Dallas Cowboys Merchandising and Outerstuff nevertheless sold Jerseys to Plaintiff with the knowledge that he intended to sell these Jerseys on Amazon.

84. Plaintiff reasonably relied on this accepted order and subsequent shipment of Jerseys to him as an assent to his desire to resell them on his Amazon storefront.

85. Based on the above-mentioned reliance, Plaintiff invested more than $196,000 on both the Jerseys and storage space.

86. This reliance placed Plaintiff at a financial disadvantage, which was further exacerbated by Defendants' counterfeit claims and Amazon's subsequent suspension of Plaintiff's account.

87. Plaintiff's damages as a result of the reliance and subsequent suspension were also substantial due to lost profits totaling approximately $80,000.

WHEREFORE, for the reasons stated, this court should find that Defendants are liable for estoppel. This court should enter a judgment ordering Defendants to pay damages, costs, and fees allowable by law.

## V. RELIEF REQUESTED

### INJUNCTIVE RELIEF

88. Plaintiff realleges and incorporates all previous paragraphs.

89. An injunction, requiring Defendants to withdraw their complaints and prohibiting future complaints based on the conduct described herein, is necessary to protect Plaintiff's legal rights to resell authentic NFPLA and Dallas Cowboys Jerseys on Amazon.

90. Plaintiff faces a real and imminent danger of irreparable harm as any further complaints, in combination with the existing complaints, will result in another account suspension and

further damages.

91. Plaintiff is likely to succeed on the merits of the claims contained herein because the first sale doctrine protects the activity described in this complaint and makes Defendant's complaints to Amazon unlawful.

92. The public interest is served by the issuance of an injunction in this matter because large companies such as the NFLPA and the Dallas Cowboys should not be allowed to, with impunity, strongarm competitors who are rightfully and legally reselling goods out of business solely to their own benefit or that of their partners.

WHEREFORE, Plaintiff requests this court issue a preliminary injunction and permanent injunction directing Defendants to remove its current complaints on Amazon and to refrain from making other such complaints to Amazon based on intellectual property rights.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury under Federal Rule of Civil Procedure 39 for all issues triable by jury.

Respectfully submitted, December 23, 2019.

By:   /s/ CJ Rosenbaum
CJ Rosenbaum
E-mail:  CJ@AmazonSellersLawyer.com
ROSENBAUM FAMULARO, P.C.
Madison Square Garden
5 Penn Plaza, 23rd Fl.
New York, New York 10001
212.256.1109
*Attorneys for Plaintiff*